| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | | |
|---|---|---|
| Erika Ramos DaSilva, | § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-12-3136 |
| Mental Health and Mental Retardation Authority of Harris County, | § § § § | |
| Defendant. | § § | |

## Opinion on Summary Judgment

1. *Introduction.*

   A woman reapplied for a job after resigning her position. The agency did not rehire her. She says that it discriminated against her because of her mental disability. Because she has no facts to support her claims, she will take nothing.

2. *Background.*

   Erika Ramos DaSilva has bipolar and attention deficit and hyperactivity disorders. She worked as a rehabilitation clinician at Mental Health and Mental Retardation Authority of Harris County from November of 2009 until October of 2010. In October of 2010, she resigned, citing personal reasons.

   In February of 2012, DaSilva applied for a case-manager position at the authority. After interviewing twice, the authority offered DaSilva the job, contingent on a background check. After a brief background investigation and internal discussions, the authority rescinded its offer and reorganized the department, eliminating the new position.

   After the reorganization, the authority had a different case-manager opening. DaSilva submitted her resume and cover letter on April 16, 2012. She applied formally in June. Before interviews began, the authority froze all hiring. The fiscal year was ending and the authority was concerned that money would not be available for new positions. The authority canceled DaSilva's scheduled interview in July.

On April 18, 2012, DaSilva filed a charge of discrimination with the Equal Employment Opportunity Commission saying that the authority rescinded her offer and did not hire her because of her mental disability. DaSilva sued saying that the authority did not hire her because of her mental disability.

3.  *Mental Disability.*

DaSilva says that she suffers from attention deficit and hyperactivity and bipolar disorders. She says that her symptoms include problems focusing, racing thoughts, delusions, poor concentration, inability to communicate clearly, and a lack of interest in paperwork.

While perhaps causally related to her disorders, these symptoms are hardly unique to them. The law does not rely on magic words or labels to determine whether someone is disabled. DaSilva must show that her afflictions substantially impair her daily living.[1]

A lack of interest in completing paperwork is universal, not indicative of a disability. Bipolar disorder or attention deficit and hyperactivity disorder may well be proper bases for legal disabilities, but only if it substantially impairs DaSilva's functions in life. Her symptoms amount to work irritants, not life impairments.

Dasilva says that the authority knew that she had the two disorders. Knowledge is not enough. She has not shown that the authority regarded her as impaired because of them.[2]

4.  *Similarly Situated.*

DaSilva has not shown a similarly situated applicant who was treated differently. The authority has not hired anyone for either position, let alone, someone who does not have bipolar or attention deficit and hyperactivity disorders.

She says that the authority has conspired to defeat her suit. She says that it has left positions open for over a year to prevent her from showing that she was treated less favorably than similarly-situated people without bipolar and attention deficit and hyperactivity disorders.

---

[1] 42 U.S.C. § 12102.

[2] *Id.*

This claim is illustrative of the case – it has no factual support. DaSilva may not infer discrimination from unfounded generalizations that do not rebut the authority's reasons for not hiring her.

5. *Qualifications.*

DaSilva says that she was well qualified for the case manager positions. She was not.

She made up portions of her employment history on her online applications and résumé. She invented a job along with its corresponding responsibilities to fill a gap in her employment history. DaSilva's applications and communications with the authority reveal a lack of integrity – a requirement of all authority employees.

DaSilva says that the authority is attempting to retroactively justify not hiring her because it learned of her fabrication after its decision. She conflates a qualification with a disqualification.

Her claim is predicated on the assumption that the authority discriminated against her. She has not shown a fact to substantiate her assumption, nor has she shown facts to establish a *prima facia* case of discrimination. DaSilva's admitted dishonesty precludes her from meeting her burden.

DaSilva also says that the authority is inventing qualifications in order to hide its invidious discrimination. Not only has DaSilva not shown facts to substantiate her claims of discrimination, but it is utterly unreasonable to say that honesty, even if not stated expressly, is not a valid qualification. The authority, in its employee handbook, requires ethical conduct of all employees. Even without the handbook, honesty and integrity are universally assumed by employers. No reasonable employer would knowingly hire a dishonest person, nor retain one once it discovered his dishonesty.

6. *Pretext.*

DaSilva says that the authority's justifications for not hiring her were pretextual. She says that the authority's e-mails expressed enthusiasm about hiring her and that the human resources department worked together to do their job.

E-mails, no matter how enthusiastic, amount to nothing in the face of hard accounting. No matter how fervently the authority wanted to hire DaSilva, it simply could not afford her.

DaSilva's claims of a human resources plot are unsupported by facts. Contrary to her conjecture, it is imminently reasonable that the department charged with hiring would know the financial situation of the authority and would be able to stop hiring people if there was no money to pay them.

7. *Conclusion.*

DaSilva was the victim of a phenomenon remarkably uncommon in government – supply and demand. For a brief time, perhaps, the supply of mid-level bureaucrats has outstripped demand. She will take nothing from the authority.

Signed on August 30th, 2015, at Houston, Texas.

                                        Lynn N. Hughes
                                 United States District Judge